[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15956
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00634-WTH-PRL

KAREN SEABERG,

Plaintiff - Appellee,

versus

STEAK N' SHAKE OPERATIONS, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 14, 2017)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Following a three-day jury trial in a slip-and-fall case resulting in a favorable verdict for appellee Karen Seaberg, Steak N' Shake Operations, Inc. (SNS) appeals the district court's denial of its motion for a judgment as a matter of law and its motion for a new trial. SNS first challenges the determination of Seaberg's legal status at the time of her injury, arguing that she was an uninvited licensee, not a business invitee and that, in any case, the question of her legal status should have been submitted to the jury instead of being decided by the district court. SNS further argues that it should have been granted a new trial on several grounds, including the district court's failure to properly instruct the jury, Seaberg's prejudicial arguments, and the verdict being contrary to the weight of the evidence. After a careful review of the parties' briefs and the record, we affirm.

I.

SNS is an Indiana-based fast-food chain operating throughout the United States. On December 8, 2011, Karen Seaberg slipped and fell at an SNS restaurant in Ocala, Florida. Seaberg was on the premises waiting to pick up her daughter, an employee of the restaurant, from work as she often did. After Seaberg entered the restaurant, she sat on a bench at the front of the store and consumed a drink purchased for her by her daughter. As Seaberg was waiting for her daughter to finish her shift, there were two different spills, caused by two different employees. Seaberg only witnessed the first spill, caused by an employee dropping a soufflé

2

cup of mayonnaise.    The employee noticed that she dropped the cup and turned around to retrieve it and clean up the spill.    Unbeknownst to Seaberg, another employee had dropped a soufflé cup shortly after the first spill, and as Seaberg was exiting the restaurant, she slipped and fell.    Following the fall, Seaberg alleged injuries to her wrist and knee which required medical care.

## II.

While we review a district court's denial of a motion for a judgment of a matter of law de novo, we review a district court's denial of a motion for a new trial for an abuse of discretion.    *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306, 1312–13 (11th Cir. 2013).[1]    Courts should grant judgments as a matter of law only when the plaintiff fails to present any legally sufficient evidence that would allow for a reasonable jury to find in her favor on a material element of the claim.    *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005).

## III.

SNS argues that because Seaberg was an uninvited licensee, and not a business invitee, the district court erred in not granting its motion for a judgment as a matter of law.    According to SNS, Seaberg was owed a lesser duty of care and

---

[1] Because diversity jurisdiction was the basis for this appeal, Florida premises liability law governs the substantive issues. *See Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001).

failed to meet her evidentiary burden to show that SNS breached its duty to her. But in the alternative, SNS argues that the question of Seaberg's legal status should not have been decided by the district court and should have instead been submitted to the jury, requiring a new trial.

In rejecting SNS's arguments, the district court not only found that it properly determined Seaberg's legal status, but also found that Florida law no longer recognizes uninvited licensees and that even if that status did exist and common law principles were applicable, Seaberg was still a business invitee.

In Florida, when a person is injured after a slipping and falling on a "transitory foreign substance" while on the premises of a business, she must prove "that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it" in order to recover any damages. Fla. Stat. § 768.0755. This statute, however, does not affect any common-law duties of care. *Id.* And under Florida common law, "[v]isitors upon the private property of others fall within one of three classifications: they are either trespassers, licensees, or invitees." *Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972). Licensees enter property for their own convenience, while invitees enter for purposes connected with the business. *Id.* at 147–48. Furthermore, where the material facts are not in dispute, the legal status of the person injured on

4

the business premises is a question of law for the court.  *See Wood v. Camp*, 284 So. 2d 691, 696 (Fla. 1973).

The district court did not err in denying SNS's motion for a judgment as a matter of law.  "Judgment[s] as a matter of law [are] appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict," and that is just not the case here. *Middlebrooks v. Hillcrest Foods Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). Regardless of whether the statutory or common law premises liability principles apply, Seaberg met her evidentiary burden.  Under common law premises liability principles, Seaberg was a business invitee at the time of her fall by virtue of her consuming a drink sold by SNS—the fact that her daughter purchased it for her is irrelevant.  *See Post*, 261 So. 2d at 147–48.  And under statutory principles, Seaberg met her evidentiary burden for all of the required elements.  Video evidence and testimony established that two spills occurred, that at least one employee had actual knowledge about a spill, and that these kinds of spills occurred with such regularity that SNS would have been on constructive notice. *See* Fla. Stat. § 768.0755.  Lastly, because none of the material facts were disputed due to the incident being on video, the district court had the authority to determine Seaberg's status as a matter of law.  *See Wood*, 284 So. 2d at 696.

5

IV.

SNS also contends that it is entitled to a new trial based on several grounds—the district court's refusal to grant SNS a jury instruction on comparative negligence, Seaberg's unfair and prejudicial arguments during closing, and the verdict being contrary to the weight of the evidence.

The district court did not abuse its discretion in declining to grant SNS's motion for a new trial on any of the grounds argued. First, because SNS did not plead comparative negligence as an affirmative defense, it was waived. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010). Second, Seaberg's counsel's arguments were neither unfair, nor prejudicial. Attorneys are afforded "broad latitude in closing arguments." *Riggins v. Mariner Boat Works, Inc.*, 545 So. 2d 430, 433 (Fla. Dist. Ct. App. 1989). Thus "an improper closing argument will not result in a new trial unless the statements are highly prejudicial, inflammatory, and improper." *Id.* During rebuttal closing arguments, Seaberg's counsel (1) mirrored SNS's comments arguing that SNS's expert witness also had a financial stake in testifying, and (2) commented on the absence of witnesses and testimony in response to opposing counsel's comments about the soufflé cup being empty. None of counsel's statements, on their own, are "sufficiently prejudicial or inflammatory [so as] to warrant a new trial." *Id.* And third, the verdict was not against the manifest weight of the evidence. Between video evidence and

6

testimony, there was more than enough evidence presented, for a jury to find for Seaberg.  *See Lamonica*, 711 F.3d at 1312–13.

**AFFIRMED**